IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MERCER OUTDOOR ADVERTISING, LLC, <br> Plaintiff, <br><br> v. <br><br> CITY OF HERMITAGE, PENNSYLVANIA, <br> Defendant. | ) <br> ) <br> ) <br> ) 2:14-cv-00561 <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**Memorandum Opinion and Order of the Court**

Pending before the Court is the MOTION TO DISMISS PLAINTIFF'S COMPLAINT PERSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) (ECF. No. 10), filed by Defendant City of Hermitage, Pennsylvania ("Hermitage") with brief in support. Plaintiff Mercer Outdoor Advertising, LLC ("Mercer") filed a brief in opposition on July 14, 2014, and Hermitage filed a reply on July 21, 2014. The Motion is ripe for disposition.

Factual and Procedural Background

The relevant facts are undisputed. Plaintiff Mercer is a family organization which operates a signage company specializing in posting both commercial and non-commercial messages. (Comp. ¶ 1) Mercer's primary clientele are charities and small-to-medium-sized businesses. (Comp. ¶ 6).

Prior to June 2013, representatives of Mercer observed a lack of outdoor advertising in Hermitage. (Comp. ¶ 7). Mercer investigated the business potential in Hermitage, in an attempt to find property owners willing to lease land as signage locations. (Comp. ¶ 8). Eventually, seven property owners in Hermitage agreed to permit Mercer to post and operate signs, in return for

1

payment. (Com. ¶ 9). The locations included: (a) North Hermitage Road, Lot #1; (b) 2925 East State Street; (c) 2410 State Route 18; (d) 1430 North Hermitage Road; (e) 271 North Hermitage Road; (f) 405 South Hermitage Road; and (g) 711 South Hermitage Road. (Comp. ¶ 13). Mercer contends that the proposed signs would comply with all Pennsylvania regulations, including size, spacing, and zoning. (Comp. ¶ 4). Based on Hermitage's City Zoning Ordinance, which defines various types of signage, Mercer identified each of its proposed signs as billboards. (Comp. ¶ 12).

Procedural History

On or about June 21, 2013, Mercer submitted permit applications to Hermitage, and sought permission to install and operate signs at six of the locations which it had procured. (Comp. ¶ 13). On or about August 16, 2013, Mercer submitted a sign permit application for a seventh property. (Comp. ¶ 14). The City Planning Technician, Nathan Zampogna, denied all of the applications because billboards are not permitted in the commercial zoning districts of Hermitage. (Comp. ¶ 17). "While the proposed billboards were otherwise noncompliant due to size, height and proximity to an intersection, the sole basis for denial by the zoning officer was the impermissible zoning, per §306.10 of the ordinance." (ZHB Op. ¶ 12). Section 306.10 does not allow placement of billboards in either the Central Commercial or the Highway Commercial zoning districts of Hermitage. (ZHB Op. ¶ 10).

Mercer then filed suit against Hermitage in this Court, in which it alleged financial damages and challenged the constitutionality of Hermitage's Zoning Ordinance. (Comp. ¶ 20). The Court ruled that Mercer's claim was not ripe, due to its failure to first appeal Zapogna's denial to the Hermitage Zoning Hearing Board ("ZHB"). (Comp. ¶ 22).

2

Mercer then appealed to the ZHB. On April 16, 2014, the ZHB affirmed the initial denial of Mercer's permit applications in a written decision. (Comp. ¶ 25 and Exh. B). On May 1, 2014, Mercer filed a new Complaint in this Court, in which it alleges in Count 1 that Hermitage's Zoning Ordinance violates the First Amendment; in Count 2 that the Ordinance violates the Fourteenth Amendment; in Count 3 that the Ordinance violates the Pennsylvania Constitution; and in Count 4 Mercer requests that this Court overturn the decision of the ZHB. Mercer seeks judgment against Hermitage, including: (1) a declaration that the Hermitage Zoning Ordinance is unconstitutional; (2) an injunction against Hermitage enforcing its Zoning Ordinance; and (3) an award of damages and attorney's fees. (Comp. ¶ 40). In response, Hermitage filed a Motion to Dismiss on June 26, 2014. (ECF. No. 10).

The relevant provisions of the *City of Hermitage Zoning Ordinance*, effective Dec. 23, 1991, which Mercer is contesting include: §§ 105, which says "The City of Hermitage will be exempt form the provisions of this Ordinance in the exercise of its municipal functions."; 202, which defines the term "billboard" as, "a sign indicating a business conducted, a commodity sold, or a service rendered, somewhere other than on the premises…"; 306.10, which limits the zoning districts where billboards are permissible to the Light and Heavy commercial districts; 409.4(7), which exempts "signs for City events or promotions, or similar community events"; and 409.5(5), which prohibits "Any sign which advertises a business, goods or services not located on the same property as said sign." Mercer also takes exception to § 308.27, which limits billboard use in the following ways:

> Billboards shall be permitted as a conditional use in the Light Industrial and Heavy Industrial Zoning districts provided:
> (a) Such signs shall not be placed within 150 feet of another.
> (b) Such signs shall not be placed within 250 feet of any residence, church or similar edifice.
> (c) Such signs shall not be placed with (sic) 250 of any road intersection or at a

   curve or at any other place where vehicular line of sight could be partially or completely obstructed.
 (d) A set back of 50 feet from the centerline of all adjacent street is required.
 (e) Such signs shall not exceed 150 square feet in area when viewed from its widest silhouette.
 (f) Such signs shall not exceed a total height of 20 feet, as measured from the ground to the top of the sign.

*Zoning Ordinance,* § 308.27. The Court notes that the Zoning Odinance was "adopted by virtue of the authority granted to the City under Article VI of the Pennsylvania Municipalities Planning Code, Act 247 of 1968." These documents were provided to the Court as attachments to Mercer's complaint.[1]

Standard of Review

  A motion to dismiss pursuant to Rule 12(b)(6) challenges the legal sufficiency of a complaint, which may be dismissed for the "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6) Upon review of a motion to dismiss, the Court must accept all well-pleaded facts and allegations, and must draw all reasonable inferences therefrom in favor of the plaintiff. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 220 (3d Cir. 2011), *cert. denied*, 132 S. Ct. 1861 (2012) (citing *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010)). However, as the Supreme Court of the United States has made clear in *Bell Atlantic Corp. v. Twombly*, such "[f]actual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. 554, 555 (2007).

  The Supreme Court later refined this approach in *Ashcroft v. Iqbal*, emphasizing the requirement that a complaint must state a plausible claim for relief in order to survive a motion

---

[1] "To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Ben. Guar. Corp. v. White Consol. Indus. Inc.,* 998 F.2d 1192, 1196 (3d Cir. 1993). *See* Wright and A. Miller, *Federal Practive and Procedure* § 1357, at 299 (2d ed. 1990).

to dismiss. 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 555). Nevertheless, "the plausibility standard is not akin to a 'probability requirement,'" but requires a plaintiff to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 555).

To determine the legal sufficiency of a complaint after *Twombly* and *Iqbal,* the United States Court of Appeals for the Third Circuit instructs that a district court must take a three step approach when presented with a motion to dismiss for failure to state a claim. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 n.7 (3d Cir. 2010) (noting that although *Iqbal* describes the process as a "two-pronged approach," it views the case as outlining three steps) (citing *Iqbal*, 556 U.S. at 675). First, "the court must "tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* at 130 (quoting *Iqbal*, 556 U.S. at 675) (alteration in original). Second, the court "should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). Third, "'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).

Accordingly, the Court must separate the factual and legal elements of the claim and "accept the factual allegations contained in the Complaint as true, but [ ] disregard rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements." *James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012) (citing *Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 555-57; *Burtch*, 662 F.3d at 220-21). The Court "must then determine

whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (citing *Iqbal* 556 U.S. at 678). The determination for "plausibility" will be "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id*. at 211 (quoting *Iqbal*, 556 U.S. at 679).

However, nothing in *Twombly* or *Iqbal* changed the other pleading standards for a motion to dismiss pursuant to Rule 12(b)(6) and the requirements of Rule 8 must still be met. *See Phillips v. Co. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (internal citations omitted). The Supreme Court did not abolish the Rule 12(b)(6) requirement that "the facts must be taken as true and a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on those merits." *Phillips,* 515 F.3d at 231 (citing *Twombly*, 550 U.S. at 553). Rule 8 also still requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 677-78 (citing Fed. R. Civ. P. 8(a)(2)). While this standard "does not require 'detailed factual allegations,' it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" and a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 679 (quoting *Twombly*, 550 U.S. at 544-55). Simply put, Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

Legal Analysis

Mercer has alleged that Hermitage's Zoning Ordinance amounts to an impermissible *de facto* ban on billboards, which infringes on the First Amendment free speech rights of Mercer. Hermitage has responded that the city has a significant interest in limiting the use and placement of billboards for safety and aesthetics, and that the restrictions still allow for reasonable time, place and manner of billboard use. Mercer also conclusorily alleges that its Equal Protection and Due Process rights are violated because the ordinance allows government signs to circumvent the permit application process. Hermitage has responded that this allegation is too conclusory to be accepted by the Court. Mercer argues that the alleged blanket ban on billboards is unconstitutional under the Pennsylvania Constitution. Hermitage reiterates that its Zoning Ordinance reasonably limits billboards, and does not amount to a *de facto* ban. Finally, Mercer asks the Court to overturn the ZHB decision. The Court will address these contentions seriatim.

*Count 1 – Hermitage's Zoning Ordinance does not improperly restrict Mercer's First Amendment rights.*

Mercer's primary cause of action is that its free speech rights are being infringed. Alleging six separate First Amendment violations, Mercer claims: (1) the Ordinance is impermissibly content-based; (2) the Ordinance impermissibly suppresses noncommercial speech; (3) the Ordinance grants unfettered discretion to city officials to license speech; (4) the Ordinance fails to enumerate any justifiable governmental or societal purpose; (5) the city presumes all signs to be illegal, and then permits them only on a case-by-case basis; and (6) the Ordinance lacks requisite procedural safeguards for the permit process. (Comp. ¶ 28 a-f).

A.  Hermitage's Zoning Ordinance does not Constitute a *De Facto* Ban

Mercer relies on a variety of legal arguments to support its allegation that Hermitage has imposed a *de facto* ban on billboards. First, Mercer alleges that the zoning ordinance contains a comprehensive ban which makes all billboards illegal within Hermitage. Second, Mercer alleges that Hermitage possesses a "pocket veto," based on a lack of time limit in the zoning ordinance. Third, Mercer alleges that the language of the zoning ordinance provides so much discretion to the city that even billboards which meet all enumerated criteria may still be denied by the zoning officer. The Court addresses each of these arguments seriatim.

1. Mercer alleges that Hermitage's Zoning Ordinance § 409.5(5) creates a prohibition on advertising signage, other than on-site advertising. Mercer also argues that § 409.5(5) trumps the provisions of §§ 306.10 and 308.27, which permits billboards in industrial zones. (ECF. No. 12, at 3). Mercer relies on the language of Zoning Ordinance § 105 which states that when regulations conflict, the more restrictive regulation "shall govern." Arguing that Hermitage's broad billboard ban is more restrictive than § 308.27, which allows billboards in industrial zones, Mercer claims that an outright ban is therefore established, even in industrial zones. (ECF. No. 12, at 3).

However, Mercer's argument would render § 308.27 completely null, void and mere surplusage. Such an interpretation violates the basic rules of legal construction, which mandate that a regulation may not be read in such a way that it renders aspects of same meaningless. *See TRW, Inc. v. Andrews,* 534 U.S. 19, 31 (2001); *Duncan v. Walker,* 533 U.S. 167, 174 (2001). *See also Idahoan Fresh v. Advantage Produce, Ind.,* 157 F.3d 197, 202 (3d Cir. 1998) ("[C]ourts should endeavor to give meaning to every word…and…avoid a meaning which renders an element superfluous…This basic tenet of statutory construction applies equally to the

interpretation of regulations.") The Court finds that the proper reading of the Hermitage Zoning Ordinance is a general ban on billboards, except as provided under §§ 306 and 308.27. In other words, Hermitage has determined to allow billboards in certain places where otherwise they would not be permitted. Mercer's proposed interpretation – that the Zoning Ordinance bans all billboards – is rejected.

2. Mercer also alleges that Hermitage holds a "pocket veto" for any sign it does not wish to approve, because the Zoning Ordinance does not specify a time limit for Hermitage to make a decision on a permit application. (ECF. No. 12, at 13). In stark contradiction to Mercer's claim, the zoning ordinance of Hermitage was "adopted by virtue of the Authority granted to the City under Article VI of the Pennsylvania Municipalities Planning Code." *Zoning Ordinance,* § 103. Section 908(9) of the Municipalities Planning Code ("MPC") dictates, that "[t]he board or the hearing officer, as the case may be, shall render a written decision or, when no decision is called for, make written findings on the application within 45 days after the last hearing before the board or hearing officer." Act of 1968, P.L. 805, No.247 § 908(9). Moreover, "where the board fails to render the decision within the period required by this subsection or fails to commence, conduct or complete the required hearing … the decision shall be deemed to have been rendered in favor of the applicant…." *Id.* In other words, if Hermitage ever refused to decide a permit application issue, any application not ruled on in 45 days would be approved as a matter of law. Therefore Mercer's claim of a "pocket veto" has no merit.

3. Mercer argues that the language of Hermitage's sign restrictions grants such broad discretion that the Zoning Ordinance is unconstitutional. Mercer specifically references the use of the word "may" as opposed to the word "shall," citing § 608(6) which says, "The Board may grant a variance;" and § 306 which says, "Conditional uses may be granted or denied by the

9

board." (ECF. No. 12, at 17).

In context, the language of the Zoning Ordinance does not provide unfettered discretion to Hermitage. Permit applications are approved based on their respective adherence to the Ordinance Hermitage has imposed. The general rules regarding the consideration of a sign permit are very clear: "Billboards shall be permitted," assuming the various location and size requirements are followed. *Zoning Ordinance,* § 308.27. Therefore Mercer's claim that Hermitage may legally reject even a sign which meets all listed criterion is patently false, and the claim fails. The zoning ordinance and the billboard restrictions which it contains do not amount to a *de facto* ban.

### B. Hermitage's Zoning Ordinance is Content-Neutral

Having determined that the Hermitage Zoning Ordinance does not impose a *de facto* ban on billboards in the community, the next question is whether the restrictions in question are content-based or content-neutral. *Rappa v. New Castle Cnty.,* 18 F.3d 1043, 1053 (3d Cir. 1994). A regulation is content-neutral when it "merely restricts the total quantity of speech by regulating the time, the place or the manner in which one can speak…." *Id. Rappa* held that a "context-sensitive" analysis should be used to differentiate which speech may be recognized as content-neutral. *Id.* at 1064. A regulation may be content-neutral even if it restricts some signs to "on-site" information, so long as "there is a significant relationship between the content of a particular speech and a specific location…." *Id.* at 1065. *See Melrose, Inc. v. City of Pittsburgh*, 613 F.3d 380, 389 (3d Cir. 2010) ("Allowing such 'context-sensitive' signs while banning others is not discriminating in favor of the content of these signs; rather, it is accommodating the

special nature of such signs so that the messages they contain have an equal chance to be communicated.")

In *Hill v. Colorado,* the U.S. Supreme Court ruled that a regulation is not "content based" when:

> (1) the regulation "is not a 'regulation of speech,'" but rather "a regulation of the places where some speech may occur;" (2) the regulation "was not adopted 'because of disagreement with the message" conveyed; or (3) the government's interests in the regulation "are unrelated to the content of the [affected] speech."

530 U.S. 703, 719-720 (2000). Mercer claims that the Zoning Ordinance is "impermissibly content based," (Comp. ¶ 28a), and alleges "favoritism" to certain entities while "prohibiting speech by other entities." (Comp. ¶ 32.a). Not a single fact is cited to support these conclusory allegations. The sections to which Mercer objects as "content based" include §§ 202 (defining billboards to included signs bearing commercial and/or noncommercial content unrelated to the premises); 308.27 (subjecting billboards to a specialized conditional use process and stricter regulations than signs bearing on-premise commercial messages; 409.4(7) (wholly exempting "signs for City events or promotions, or similar community events"); and 409.5 (prohibiting signs advertising off-premises messages except in limited circumstances). *Zoning Ordinance* §§ 202, 308.27, 409.4(5, 7). Much of what Mercer decries was specifically affirmed by the U.S. Supreme Court in *Metromedia, Inc. v. City of San Diego,* 453 U.S. 490 (1981) (determining the extent to which municipalities may restrict billboard use). For example "offsite commercial billboards may be prohibited while onsite commercial billboards are permitted." *Id.* at 512. The Court also states, "San Diego has obviously chosen to value one type of commercial speech- on-site advertising – more than another kind – off-site advertising…. We do not reject that judgment." *Id.*

The Hermitage ordinance reflects that content is not considered when reviewing sign

permit applications. (ECF. No. 11, at 20-22). "There is no indication that §§ 306, 308.27, or any other sections of the Zoning Ordinance grant the City or its officials unfettered discretion to 'license speech'…." (ECF. No. 11, at 21). Because Hermitage's interest in the Zoning Ordinance revolves around aesthetics and safety, and because the Ordinance limits only locations for speech, the Ordinance is not considered "content based" under the *Hill* test. Absent any factual information to the contrary, Mercer's conclusory allegation does not overcome the "well-pleaded complaint" standard of *Iqbal* and *Twombly*.

> When a regulation is found to be content-neutral, the government may:
>
> impose reasonable restrictions on the time, place, or manner of protected speech, provided [1] the restrictions "are justified without reference to the content of the regulated speech, [2] that they are narrowly tailored to serve a significant governmental interest, and [3] that they leave open ample alternative channels for communication of the information."

*Ward v. Rock Against Racism,* 491 U.S. 789, 791 (1989) (quoting *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 (1984)). In this case, the Zoning Ordinance of Hermitage is clearly constitutional when analyzed under the context-sensitive approach.

Part one of the test requires an ordinance to be "justified without reference to the content of the regulated speech." *Clark,* 468 U.S. at 293. In Hermitage, billboards are restricted based on their location, and are only permitted within the industrial corridor of the city. *Zoning Ordinance* § 308.27. This is clearly not a restriction based on the content of the signs. Within the industrial corridor, § 308.27 of the Hermitage's zoning ordinance restricts billboards based on size, distance from the roadways, and proximity to buildings, without any reference at all to the type of speech displayed on them. As explained in *Rappa* and *Melrose*, a distinction between on-site and off-site use does not prevent an ordinance from being neutral. "[T]he on-site exception does not preclude any particular message from being voiced in any place; it merely establishes the

appropriate relationship between the location and the use of an outdoor sign to convey a particular message." *Rappa*, 18 F.3d at 1067. Therefore, part one is met by Hermitage's Zoning Ordinance.

Part two requires that the restrictions be "narrowly tailored to serve a substantial governmental interest." *Clark,* 468 U.S. at 293. It is well established in the Third Circuit that as a "substantial governmental interest," billboard usage may be restricted for both safety and aesthetics. *Interstate Outdoor Advertising, L.P v. Zoning Board of Mount Laurel,* 706 F.3d 527, 532 (3d Cir. 2013). The U.S. Supreme Court's holding in *Metromedia* was predicated on "the accumulated, common-sense judgments of local lawmakers and of the many reviewing courts that billboards are real and substantial hazards to traffic safety." 453 U.S. at 509. Furthermore, the "common-sense judgments of local lawmakers" need not even be based on a specific local traffic study. According to *Renton v. Playtime Theaters,* 475 U.S. 41, 51-52 (1986)*,* the First Amendment does not require cities to produce independent evidence of a safety or aesthetic hazard, so long as they reasonably believe that whatever evidence they rely on is relevant. As the Third Circuit points out, the mere fact that the basis of a regulation may be challenged, "in no way undermines the Supreme Court's deference to local governmental and regulatory judgments about aesthetics and safety insofar as the placement of billboards is concerned." *Interstate Outdoor Advertising,* 706 F.3d at 533.

In this case, Hermitage sought to advance a legitimate governmental interest by restricting billboard usage for the purpose of safety and aesthetics. "The current Hermitage Zoning Ordinance was enacted after [considering] the character of the city neighborhoods, aesthetics, and traffic safety in designating permitted uses in the respective zoning districts." (ZHB Op. ¶ 27). "Section 103 of the Hermitage Zoning Ordinance lists the purposes of the

ordinance, including but not limited to, protection of public health, safety, and welfare as well as protection against danger and congestion in travel." (ZHB Op. ¶ 28). The decision of Hermitage to limit possible billboard locations is narrowly tailored to advance this interest. "If the city has a sufficient basis for believing that billboards are traffic hazards and are unattractive, then obviously the most direct and perhaps the only effective approach to solving the problems they create is to prohibit them." *Metromedia,* 435 at 508. Thus, Hermitage has a substantial governmental interest in restricting the use of billboards, and furthermore is doing so in a manner recognized as valid by the law of the United States Supreme Court.

Part three of the *Clark* test must analyze whether "ample alternative channels for communication" have been left available by the governmental restrictions. 468 U.S. at 293. As the court in *Interstate Outdoor Advertising* pointed out while discussing this step of the analysis, "[p]otential alternative channels of communication include on-premise signs, internet advertising, direct mail, radio, newspapers, television, advertising circulars, advertising flyers, commercial vehicle sign advertising, and public transportation advertising." 706 F.3d at 535. Under the Hermitage ordinance, alternative channels also include billboards in the industrial zones. *Zoning Ordinance,* § 308.27. As hereinabove explained, the Zoning Ordinance does not create a *de facto* ban on billboards.

As part of its argument, Mercer has alleged that the alternative channels of advertising are insufficient because they are not viable economically. This argument has been squarely rejected. Maximizing profit "is not the animating concern of the First Amendment." *Interstate Outdoor Advertising,* 706 F.3d at 535. The Third Circuit has clearly established that "the fact that restrictions prohibit a form of speech attractive to plaintiff does not mean that no reasonable alternative channels of communication are available." *Id.* (quoting *Naser Jewelers, Inc. v. City of*

*Concord, N.H.,* 513 F.3d 27, 37 (1ˢᵗ Cir. 2008)). Therefore, the billboard restrictions of Hermitage are constitutional.

B. <u>Impact on Non-Commercial Speech</u>

Because Hermitage's sign restriction "concerns both commercial and noncommercial speech, we must conduct two distinct but related inquiries." *Interstate Outdoor Advertising,* 706 F.3d at 530. *See Metromedia,* 453 U.S. at 504 ("Because our cases have consistently distinguished between the constitutional protection afforded commercial speech as opposed to noncommercial speech… we consider separately the effect of the ordinance on commercial and noncommercial speech").

Although noncommercial speech is granted more protection than commercial speech, it is still subject to potential regulation. Such regulations are constitutional "provided that they are [1] justified without reference to the content of the regulated speech, [2] that they serve a significant governmental interest, and [3] that in so doing they leave open ample alternative channels for communication of the information." *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.,* 425 U.S 748 (1976); *cited by Frumer v. Cheltenham Twp.,* 709 F.2d 874 at 876. (3d. Cir. 1983). This is identical to the *Clark* test which was hereinabove discussed. The Court applies the same analysis as stated in Section A, and finds that the billboard restrictions of Hermitage on non-commercial speech are constitutional.

C. <u>Impact on Commercial Speech</u>

In *Central Hudson Gas and Electric Corp. v. Public Service Comm'n*, the United States Supreme Court held that: "The Constitution… accords a lesser protection to commercial speech than to other constitutionally guaranteed expression." 447 U.S. 557, 563 (1980). The particular

protections to be extended to commercial speech are determined "both by the nature of the expression and of the governmental interests served by its regulation." *Id.* at 562-563.

The *Central Hudson* case laid out a four-part test for determining the constitutionality of a governmental speech regulation:

> (1) The First Amendment protects commercial speech only if that speech concerns lawful activity and is not misleading. A restriction on otherwise protected commercial speech is valid only if it (2) seeks to implement a substantial governmental interest, (3) directly advances that interest, and (4) reaches no further than necessary to accomplish the given objective.

*Id.* at 563-566. Hermitage bears the burden of proving that its Zoning Ordinance is constitutional. "[A] governmental body seeking to sustain a restriction on commercial speech must demonstrate that the harms it recites are real, and that its restriction will in fact alleviate them to a material degree." *Edenfield v. Fane,* 507 U.S. 761, 770-771 (1993) (*citations omitted*).

As is clear from the Court's analysis in part A, Hermitage sought to address a substantial governmental interest, and did advance that interest by restricting the use of billboards with reasonable time, place, and manner regulations. Thus, parts 2 and 3 of the *Central Hudson* test have been met.

Hermitage must establish that its Zoning Ordinance does not reach further than is necessary to promote the interests of the city. Hermitage points out that the zones in which billboards are permitted are "neither small nor isolated." (ZHB Op. ¶ 29). In *Interstate Outdoor Advertising,* the Third Circuit upheld a total restriction on billboards within the township of Mount Laurel. 476 F.3d at 534. When such broad billboard bans are acceptable, so long as the other criteria are met, logic indicates that the reasonable time, place, and manner restriction of Hermitage is constitutionally permissible as well. In sum, Mercer has failed to allege a viable First Amendment claim.

*Count 2 –The implementation of the Zoning Ordinance of Hermitage does not violate the Fourteenth Amendment's guarantee of Equal Protection and Due Process.*

Mercer argues that the Zoning Ordinance "favors the speech of certain entities, including the City and its officials, while prohibiting speech by other entities," and that those who defy the Ordinance are denied due process because of the "vague and ambiguous provisions" that describe which actions will be prosecuted. (Comp. ¶ 32 a-b).

To plead an Equal Protection violation, Mercer must show that it was subject to different treatment than another similarly situated party. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439, (1985). "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *Id.* "Persons are similarly situated under the Equal Protection Clause when they are alike 'in all relevant aspects.'" *Nordlinger v. Hahn,* 505 U.S. 1, 10, (1992).

The Third Circuit has established a "two-step inquiry" which this court must apply when "reviewing an equal protection challenge to a city zoning ordinance." *Melrose,* 613 F.3d at 394. This inquiry "properly places the initial burden on the complaining party, first to demonstrate that it is 'similarly situated' to an entity that is being treated differently before the local municipality must offer a justification for its ordinance." *Id.*

Mercer has not met its burden. The entire argument of Mercer on this point consists of a single sentence, which names only "the City and other entities." (Comp. ¶ 32 a). Mercer has not even attempted to demonstrate that they are similarly situated to any other entity who is allegedly receiving different treatment, and therefore Mercer has failed to state a claim which rises to the pleading standard of *Iqbal* and *Twombly*.

The Court finds that Mercer's claim is lacking with regard to its Due Process argument as well. Mercer conclusorily alleges that the Zoning Ordinance is "vague and ambiguous." (Comp. ¶ 32b). Provisions are vague and ambiguous when they are "not free from doubt." *Martin v. Occupational Safety,* 499 U.S. 144, 150 (1991). As the Court hereinabove explained, the various sections of the zoning ordinance are not confusing; it is clear the general ban on billboards has an exception for use in industrial zones. Moreover, the Court notes that Mercer has taken advantage of the legal process afforded it, first by petitioning the zoning officer, then by appealing his decision to the ZHB, and finally by coming before this Court. Therefore, the Zoning Ordinance is not vague and/or ambiguous, and none of Mercer's Due Process rights have been violated in this case.

*Counts 3 and 4 – The Court will not exercise supplemental jurisdiction over these issues of state law.*

In Count 3, Mercer alleges that the Hermitage zoning ordinance is unconstitutional under the Pennsylvania Constitution. In Count 4, Mercer asks the Court to review and overturn the ZHB's decision. The Court has discretion to decline to exercise supplemental jurisdiction, if it "has dismissed all claims over which is has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3). The Court of Appeals has stated that, "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Borough of West Mifflin v. Lancaster,* 45 F.3d 780, 788 (3d Cir. 1995). The federal claims have been dismissed at the pleading stage, and therefore the Court abstains from exercising jurisdiction over the pendant state claims.

Conclusion

In accordance with the foregoing, the MOTION TO DISMISS PLAINTIFF'S COMPLAINT PERSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6) (ECF No. 10) will be **GRANTED**. The Complaint for Damages and Request for Declaratory, Injunctive, and Equitable Relief will be dismissed with prejudice and the clerk will docket this case closed.

An appropriate Order follows.

McVerry, J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MERCER OUTDOOR ADVERTISING, LLC,<br>Plaintiff,<br><br>v.<br><br>CITY OF HERMITAGE, PENNSYLVANIA,<br>Defendant. | )<br>)<br>)<br>) 2:14-cv-00561<br>)<br>)<br>)<br>)<br>)<br>) |

## ORDER OF COURT

AND NOW, this 28th day of July, 2014, in accordance with the foregoing memorandum opinion, it is hereby **ORDERED, ADJUDGED and DECREED** that Defendant's MOTION TO DISMISS PLAINTIFF'S COMPLAINT PERSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6) (ECF No. 10) is **GRANTED** and the Complaint for Damages and Request for Declaratory, Injunctive, and Equitable Relief is hereby **DISMISSED WITH PREJUDICE**. The clerk shall docket this case closed.

BY THE COURT:

s/Terrance F. McVerry
United States District Judge

cc: **All counsel of record**
Via CM/ECF